J-S81023-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ERNEST KEY | |
| Appellant | No. 885 EDA 2016 |

Appeal from the Judgment of Sentence February 10, 2016
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0000906-2015

BEFORE:  BOWES, J., MOULTON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MOULTON, J.:                  **FILED FEBRUARY 14, 2017**

Ernest Key appeals from the February 10, 2016 judgment of sentence entered by the Montgomery County Court of Common Pleas following his convictions for driving under the influence ("DUI") of controlled substances to a degree which impairs the ability to safely drive, careless driving, and driving while operating privileges suspended or revoked.[1]  We affirm.

The trial court summarized the factual and procedural history of this matter as follows:

> On December 17th 2014, Plymouth Township Police Department in Montgomery County received a report that a vehicle . . . had crashed into a telephone pole on Conshohocken Road.  Officer Jeff Conrad ("Officer

---

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. §§ 3802(d)(2), 3714(a), and 1543(a), respectively.

Conrad") responded to the one-vehicle accident and witnessed two individuals standing around the vehicle; later identified as [Key] and Ms. [Aesha] Wheeler. Both indicated they were not injured and Officer Conrad did not observe any visible injuries to their persons. [Key] denied medical assistance from the EMTs on scene.

During Officer Conrad's questioning, [Key] slurred his speech, appeared confused, continually nodded, and appeared to be falling asleep. [Key] held onto the police car in order to remain standing. [Key] affirmed he was taking medications daily for a medical condition.

Before his car was towed, [Key] requested his medications from his vehicle. Officer Conrad observed the medications in plain sight. The medications were not entered into evidence and subsequently returned to [Key].

Possessing almost 19 years' experience, as well as approximately 80 hours of training with DUI arrests, Officer Conrad believed [Key] to be impaired. Since [Key] admitted to driving the vehicle, Officer Conrad suspected [Key] of Driving Under the Influence. Officer Conrad placed him into custody and transported [Key] to Mercy Suburban Hospital for a blood chemical test. National Medical Services, a national forensic laboratory for toxicology testing, analyzed the blood and reported two drugs in [Key's] system: Benzodiazepine, also known as Valium, and Oxymorphone, commonly known as Oxycodone. Both Benzodiazepine and Oxymorphone are central nervous system depressants.

The court considered [Key's] Motion to Compel Discovery and his Petition for Writ of Habeas Corpus for Dismissal of DUI charge due to circumstantial evidence on May 18, 2015. [Key] appeared *pro se* for the consolidated hearing before Senior Judge Braxton. At this hearing, the toxicology report was admitted into evidence and the Commonwealth expressed repeatedly its intent to have the forensic toxicologist present her opinion during trial. (N.T., Habeas Corpus and Motion to Compel Hearing ("HCMC"), 5/18/15, p. 33). Judge Braxton ultimately denied [Key's] Motion to Compel Discovery and held that the Habeas Corpus issue was moot.

On September 11, 2015, [Key] appeared for a scheduled bench trial and requested a jury trial.[2] Thereafter, this matter was rescheduled for trial on November 18, 2015. [Key] arrived late and trial was rescheduled for November 20, 2015. On November 20, 2015, this Court first considered [Key's] Motion to Suppress, which this Court denied. At that time, defense counsel requested a continuance to obtain an expert witness, arguing that the Commonwealth's expert provided two inconsistent reports. [Key's] Motion for Continuance was denied.

After trial on November 20, 2015, a jury found [Key] guilty of Driving Under the Influence of an Unsafe Nature, Careless Driving, and Driving Under Suspension. [Key] was later sentenced on February 10, 2016. For the DUI conviction, [Key] was sentenced to fines of $2,500 and to undergo imprisonment for not less than 15 months nor more than five years in the Montgomery County Correctional Facility, running concurrently with a previous sentence. [Key] was given credit for time served in jail from January 16, 2015 to August 25, 2015 and from November 18, 201[5] to February 10, 2016. For the Careless Driving conviction, [Key] was sentenced to pay a $100 fine. For driving with a Suspended License, [Key] was sentenced to pay a $500 fine and to serve 90 days in the Montgomery County Correctional Facility, running concurrently with the sentence imposed for the DUI conviction. [Key] was sentenced to pay the costs of prosecution for all three counts.

Opinion, 7/1/16, at 1-2 ("1925(a) Op."). Key filed a post-sentence motion

seeking reconsideration of his sentence and a new trial and/or dismissal of

_____

² The trial court entered an order dated September 15, 2015, scheduling a jury trial for November 18, 2015. Because the date on which Key appeared for his originally scheduled bench trial is unclear from the record, we will consider that Key had notice of the date of his jury trial as of September 15, 2015.

all charges, which the trial court denied on February 29, 2016. Thereafter, Key filed a timely notice of appeal.

Key raises the following issue on appeal:

> DID THE COURT ERR IN FAILING TO GRANT A DEFENSE REQUEST FOR A CONTINUANCE WHERE THE DEFENSE RECEIVED THE COMMONWEALTH['S] EXPERT TOXICOLOGY REPORT, WHICH INDICATED IMPAIRMENT, 4 DAYS PRIOR TO TRIAL AND WAS UNABLE TO SECURE AN EXPERT IN THIS SHORT PERIOD OF TIME TO REFUTE THE FINDINGS OF THIS REPORT AND PROVE THAT [KEY] WAS TAKING A THERAPEUTIC [DOSAGE] THAT WAS NOT CONSISTENT WITH UNSAFE DRIVING AND THE BEHAVIOR EXHIBITED BY [KEY] AT THE STOP AS TESTIFIED BY THE AFFIANT.

Key's Br. at 7.

Pennsylvania Rule of Criminal Procedure 106 governs requests for continuances and provides in relevant part:

> (A) The court or issuing authority may, in the interests of justice, grant a continuance, on its own motion, or on the motion of either party.
>
> . . .
>
> (D) A motion for continuance on behalf of the defendant shall be made not later than 48 hours before the time set for the proceeding. A later motion shall be entertained only when the opportunity therefor did not previously exist, or the defendant was not aware of the grounds for the motion, or the interests of justice require it.

Pa.R.Crim.P. 106(A), (D).

Our Supreme Court has explained our standard of review for denials of requests for continuances.

> The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion. As we have consistently stated, an abuse of discretion is not merely an

- 4 -

error of judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record[.]

*Commonwealth v. McAleer*, 748 A.2d 670, 673 (Pa. 2000) (internal quotations and citations omitted). Accordingly, "[i]t has long been the view of [the Pennsylvania Supreme Court] that a decision to grant or deny a continuance to secure a witness is a matter within the sound discretion of the trial court . . . ." *Commonwealth v. Small*, 741 A.2d 666, 682 (Pa. 1999). A reviewing appellate court regards the orderly administration of justice as well as the defendant's right to have adequate time to prepare a defense. *Id.* at 682-83. The court must also consider the following factors:

(1) the necessity of the witness to strengthen the defendant's case;

(2) the essentiality of the witness to the defendant's defense;

(3) the diligence exercised to procure his or her presence at trial;

(4) the facts to which he or she could testify; and

(5) the likelihood that he or she could be produced at court if a continuance were granted.

*Id.* at 683 (quotation omitted).

"A bald allegation of an insufficient amount of time to prepare will not provide a basis for reversal of the denial of a continuance motion." *Commonwealth v. Ross*, 57 A.3d 85, 91 (Pa.Super. 2012). "Instead, an appellant must be able to show specifically in what manner he was unable to

prepare his defense or how he would have prepared differently had he been given more time." *Id.* (quotation omitted). Thus, "[w]e will not reverse a denial of a motion for continuance in the absence of prejudice." *Id.* (quotation omitted).

Key argues that the trial court's denial of his motion for continuance was manifestly unreasonable. He contends that he had insufficient time to hire an expert after the Commonwealth had provided an expert report on November 16, 2015, four days prior to trial. Key argues that the November 16, 2015 report differed from an earlier expert report that had been admitted into evidence at a discovery hearing on May 18, 2015.[3] Key contends that he was prejudiced because an expert could have testified as to the effects of the level of Key's prescription medication and whether Key's actions were consistent with the level of drugs in his system.

We disagree. The toxicology report was available as of May 18, 2015, and Key does not claim that he received the toxicology report in an untimely manner.

Further, in September 2015, Key appeared before the trial court for a scheduled bench trial, at which he requested a jury trial. The jury trial was

---

[3] Key claims the second expert report "analyzed the police information and toxicology reports and it purportedly proved impairment," while the first expert report was a toxicology report, "which identifies substances in the blood, which could cause impairment in the absence of other causes." Key's Br. at 11.

scheduled for November 18, 2015. At the time of the scheduled trial, to which Key arrived late,[4] trial counsel did not seek a continuance on the ground that he received the second report only two days earlier and would be unable to retain an expert prior to trial. It was not until November 20, 2015, the date of the rescheduled jury trial, that Key requested a continuance due to the second expert report.

The trial court further found:

> The Commonwealth's expert witness, Ms. [Ayako Chan-]Hosokawa, first issued a toxicology report which was admitted into evidence on May 18, 2015.[5] (N.T., HCMC,

_____

[4] Because Key was late for the November 18, 2015 trial, the court rescheduled trial for November 20, 2015.

[5] Our review of the record indicates that two attorneys – John Kravitz and Robert F. Datner – had separately entered their appearances on behalf of Key, on March 3, 2015 and March 19, 2015, respectively. Nonetheless, Key was *pro se* at the May 18th hearing, at which he testified. **See** N.T., 5/18/15, at 51. It is not clear from the record why Key was not represented at the hearing.

During trial, the Commonwealth used Key's testimony from the May 18th hearing as impeachment evidence. N.T., 11/20/15, at 140-41, 148-50. Key did not object to the admissibility of his prior testimony for purposes of impeachment. "We have long held that [f]ailure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal." **Commonwealth v. Thoeun Tha**, 64 A.3d 704, 713 (Pa.Super. 2013) (quotation omitted). Moreover, Key did not raise this issue in his Pennsylvania Rule of Appellate Procedure 1925(b) statement. "[I]ssues not raised in a Rule 1925(b) statement will be deemed waived for appellate review." **Commonwealth v. Christmas**, 995 A.2d 1259, 1262 (Pa.Super. 2010). Accordingly, any claims for ineffective assistance of counsel arising out of the failure to object to the admissibility at trial of Key's testimony from the May 18th hearing are not properly before this Court at this time,
*(Footnote Continued Next Page)*

5/18/15, see Exhibit C-2). This report was available to [Key] and his counsel since the date of the Habeas Corpus proceedings. The toxicology report does not offer an opinion as to whether [Key] was impaired at the time of the accident/arrest. (N.T., 11/20/15 pp. 109-110). Instead, a toxicology report only indicates that "if the individual showed signs of impairment... then these substances can be responsible for the production of that impairment." (N.T., HCMC, 5/18/15 p. 12). Ms. Hosokawa's testimony at the trial is considered the "second report," wherein she states her findings and opinion are based upon a phone conference where Assistant District Attorney Brittenburg recited the police report. (N[.]T[.], 11/20/15 p. 108).

Ms. Hosokawa further testified the facts of the police report, as read to her, were consistent with Officer Conrad's testimony that she heard in open court on November 20, 2015. After explaining that "prescription level" and "level of impairment" are independent of each other, the expert went on to conclude, within a reasonable degree of scientific certainty, [Key] was impaired on December 17, 2014. (N[.]T[.], 11/20/15 pp. 101-104).

While Ms. Hosokawa's testimony differs from the toxicology report by further implicating [Key], [Key] had ample time to retain his own expert to review and render an opinion on the toxicology report. Yet, he failed to do so. Accordingly, it was not an abuse of discretion for this court to deny [Key]'s last minute request for a continuance.

1925(a) Op. at 5-6 (footnotes omitted). We find no abuse of discretion.

Judgment of sentence affirmed.

---

*(Footnote Continued)* ————————————

notwithstanding Key's ability to bring these claims in a timely filed petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/14/2017